1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  PIONEERS MEMORIAL                    Case No.:  24-CV-861 JLS (LR)
    HEALTHCARE DISTRICT, a California
12  municipal corporation,               **ORDER:**

13                    Petitioner,         **(1) GRANTING IN PART AND**
14  v.                                   **DENYING IN PART MOTIONS TO**
                                         **DISMISS (ECF Nos. 24, 25, 26);**
15  IMPERIAL VALLEY HEALTHCARE
16  DISTRICT, a California municipal      **(2) VACATING HEARING ON**
    corporation, et al.                  **PETITIONER'S MOTION FOR**
17                                       **PRELIMINARY INJUNCTION AND**
                    Respondents.         **DENYING THE SAME AS MOOT**
18  ─────────────────────────────        **(ECF No. 28);**
19
    ROB BONTA, in his official capacity as **(3) REMANDING ACTION TO**
20  California Attorney General,         **CALIFORNIA SUPERIOR COURT,**
                                         **IMPERIAL COUNTY; AND**
21                    Intervenor-Respondent.
22                                       **(4) ORDERING FURTHER**
23                                       **BRIEFING ON PETITIONER'S**
24                                       **REQUEST FOR ATTORNEYS' FEES**
25

26          Presently before the Court are three Motions to Dismiss the Amended Verified

27  Petition and Complaint ("Am. Pet.," ECF No. 8-2).  These were filed by (1) Intervenor-

28  Respondent California Attorney General Rob Bonta ("AG's Mot.," ECF No. 24);

                                          1

(2) Respondent Imperial Valley Healthcare District ("IVHD's Mot.," ECF No. 25);[1] and (3) Respondent Imperial Local Agency Formation Commission ("LAFCO's Mot.," ECF No. 26).[2,3]  The Attorney General also submitted a Memorandum of Points and Authorities in support of his Motion ("AG's Mem.," ECF No. 24-1), as did LAFCO ("LAFCO's Mem.," ECF No. 26-1).  As permitted by the Court, ECF No. 27, Petitioner Pioneers Memorial Healthcare District ("Petitioner" or "PMHD") filed a single Opposition to the Motions ("Opp'n," ECF No. 29).  The Attorney General, IVHD, and LAFCO filed separate Replies.[4]  Also before the Court is Petitioner's Motion for Preliminary Injunction ("Pet.'s Inj. Mot.," ECF No. 28), which is currently set for a hearing on September 26, 2024.[5]

Having carefully considered the Amended Petition, the Parties' submissions, and the law, the Court **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss; **VACATES** the hearing on Petitioner's Injunction Motion and **DENIES** the same **AS MOOT**; **REMANDS** this case to California Superior Court, Imperial County; and retains jurisdiction over and **ORDERS** further briefing on Petitioner's request for attorneys' fees.

---

[1] IVHD's Motion was also filed on behalf of the individuals named as respondents in this action in their capacities as members of the Imperial Valley Healthcare District's ("IVHD") board of directors.  These include Respondents Enola Berker, Katherine Burnworth, James Garcia, Laura Goodsell, Donald W. Medart Jr., Arturo Proctor, and Rodolfo Valdez.  *See* ECF No. 25.  In this Order, the Court will refer to IVHD and the foregoing individuals collectively as the "IVHD Respondents" or simply "IVHD."

[2] LAFCO's Motion was also filed on behalf of the individuals named as respondents in this action in their capacities as members of Imperial County Local Agency Formation Commission ("LAFCO").  These include Respondents Robert Amparano, Jesus E. Escobar, John Hawk, Michael W. Kelley, Jose Landeros, Javier Moreno, Maria Nava-Froelich, and David Salgado.  *See* ECF No. 26.  In this Order, the Court will refer to LAFCO and the foregoing individuals collectively as "LACFO Respondents" or simply "LAFCO."

[3] The Court previously took the Motions to Dismiss under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1).  *See* ECF No. 37.

[4] The Court will cite to the Replies as "AG's Reply" (ECF No. 31); "IVHD's Reply" (ECF No. 32); and "LAFCO's Reply" (ECF No. 33).

[5] Requests for Judicial Notice were also filed by the Attorney General (ECF No. 24-2); IVHD (ECF No. 25-1); and Petitioner (ECF No. 29-1).  These Requests for Judicial Notice are **DENIED**, as the documents attached to them do not aid the Court in resolving the instant Motions.

# BACKGROUND

## I.   Factual Background

Petitioner PMHD is a "municipal corporation and local health care district" that was originally "formed under California law" in the 1950s. Am. Pet. ¶ 5. Petitioner was created to provide health services "in the geographical center of Imperial County," where it owns and operates Pioneers Memorial Hospital. *Id.* Members of Petitioner's governing board are elected by those residing within PMHD's boundaries. *Id.*

As Petitioner tells it, two laws principally regulate the modification of healthcare districts like PMHD: (1) the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 ("CKH Act") (Cal. Gov. Code. § 56000 *et seq.*); and (2) the Local Health Care District Law ("LHCD Law") (Cal. Health & Safety Code §§ 32000–32492). *Id.* ¶ 1. The CKH Act created local agency formation commissions, like Respondent LAFCO, to "oversee the formation, dissolution, . . . and reorganization of all special districts, including healthcare districts." *Id.* ¶ 29. Meanwhile, the LHCD Law contains provisions specific to healthcare districts. *Id.* ¶ 31. So, wherever the LHCD Law speaks to administrative procedures and healthcare districts, it supersedes the CKH Act. *Id.* But whenever the LHCD Law is silent, the CKH Act fills the void. *Id.* Per Petitioner, under these laws, voters must generally approve the dissolution of local healthcare districts and the divestiture of said districts' assets.[6] *See id.* ¶¶ 40, 43. Voters also have a role to play in the formation of healthcare districts. *See id.* ¶ 32.

In late 2023, another California statute pertaining to healthcare districts came on the scene: Assembly Bill 918 ("AB 918") (Cal. Health & Safety Code §§ 32499.5–32499.95). *See id.* ¶¶ 1, 45. Among other things, AB 918 purports to (1) dissolve PMHD and another healthcare district in Imperial County; (2) create a new healthcare district (IVHD) covering all of Imperial County; and (3) transfer all of PMHD's "assets, rights, and responsibilities"

---

[6] The Amended Petition discusses the combined impact of these statutes at length. *See generally* Am. Pet. For reasons that will become clear, however, there is no need to delve into the finer details in this Order.

24-CV-861 JLS (LR)

to IVHD on the day of PMHD's dissolution. *Id.* ¶¶ 45, 47, 50. PMHD will not be dissolved until LAFCO receives and considers IVHD's recommendations regarding financial matters and other administrative issues. *See id.* ¶¶ 48–49. However, Petitioner explains, AB 918 requires LAFCO to dissolve PMHD by no later than January 1, 2025. *Id.* ¶ 49.

## II.    Procedural Background

### A.    *In State Court*

On April 10, 2024, PMHD sought to interdict AB 918 by filing its Verified Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief ("Pet.," ECF No. 1-2) in California Superior Court, Imperial County. The Petition included three causes of action. *See* Pet. at 21–30. On May 14, the Amended Petition—adding three more causes of action—followed. As relevant here, Petitioner alleges AB 918 is harming voters, patients, and PMHD itself. Specifically, Petitioner claims, *inter alia*, that (1) the "specter of the dissolution of PMHD is creating an unstable environment," which impacts its staff and patients; and (2) AB 918 deprives "PMHD's voters . . . of their fundamental right to vote" on the dissolution of a healthcare district. Am. Pet. ¶ 107.

Counts I and II of the Amended Petition are based in part on federal law. Specifically, Petitioner claims AB 918 violates the equal protection clause of the United States Constitution's Fourteenth Amendment because it constitutes "impermissible special legislation" and disparately impacts PMHD's "almost exclusively Hispanic patient and voting population." *Id.* at 24, 30 (capitalization altered and emphasis omitted). In the same Counts—and for the same reasons—Petitioner also contends AB 918 violates the California Constitution.

The Amended Petition's remaining causes of action arise purely out of state law. These include claims for: (1) equal protection violations specific to the California Constitution (Counts III and IV), *see id.* at 33–34; and (2) violations of California Government Code §§ 56021, 56375, 56881, 57102, and 57103, along with California Health and Safety Code § 32121 (Counts V and VI), *id.* at 35, 38.

/ / /

### B.     In Federal Court

On May 15, 2024, the IVHD Respondents removed the instant action to federal court pursuant to 28 U.S.C. §§ 1331 and 1441.  *See generally* Notice of Removal ("NOR"), ECF No. 1.  IVHD asserted federal question jurisdiction based on the original Petition's federal equal protection claim (having not yet been served with the Amended Petition).  *Id.* ¶¶ 4–7.  IVHD also argued the Court had supplemental jurisdiction over the Petition's state-law claims under 28 U.S.C. § 1367 because "they are a part of the same case or controversy" as Petitioner's federal cause of action.  *Id.* ¶ 8–9.  Three days later, IVHD filed an Amended Notice of Removal ("Am. NOR," ECF No. 8), which included a copy of the Amended Petition but otherwise differed little from the original Notice of Removal.

On June 6, Petitioner filed a Notice of Constitutional Challenge of State Statute ("Const. Notice," ECF No. 20), informing the Court that PMHD had notified the Attorney General about the pendency of this case pursuant to Federal Rule of Civil Procedure 5.1(a)(2).  *See* Fed. R. Civ. P. 5.1(a)(2) (requiring party filing a pleading that "draw[s] into question the constitutionality" of a "state statute" to notify the state attorney general).  Four days later, in compliance with Rule 5.1(b) and 28 U.S.C. § 2403(b), the Court issued an Order certifying to the Attorney General that a California statute had been questioned.  *See generally* ECF No. 21.  The Court also noted that, pursuant to Rule 5.1(c), the Attorney General would be allowed to intervene in this matter if he did so on or before August 5, 2024.  *Id.* at 3.  The Attorney General promptly joined the fray.  *See* ECF No. 22.

The Motions to Dismiss were filed on June 26, 2024.  The Attorney General and IVHD each moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  AG's Mot. at 1; IVHD's Mot. at 17–18.  LAFCO cited only the latter.  LAFCO's Mem. at 9–10.  While the Parties also made merits-based arguments, the jurisdictional issue of standing steals the show.  The Court will thus apply Rule 12(b)(1).[7]

---

[7] In the Ninth Circuit, "constitutional standing is evaluated under Rule 12(b)(1)," while "prudential standing is evaluated under Rule 12(b)(6)."  *Elizabeth Retail Props. LLC v. KeyBank Nat. Ass'n*, 83 F. Supp. 3d 972, 985–86 (D. Or. 2015).  The principal question here regards a political subdivision's

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject-matter jurisdiction is on the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(1), a party may raise by motion the defense that the complaint lacks subject matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would under Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121.

In a factual attack, on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In such challenges, courts (1) "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and (2) "need not presume the truthfulness of the plaintiff's allegations." *Id.* After the moving party evidences the lack of subject matter jurisdiction, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City*

---

"standing" to sue its parent state for constitutional violations, a topic the Ninth Circuit has never explicitly categorized as either constitutional or prudential. As the Court concludes the Circuit's treatment of this issue suggests the constitutional label would be more appropriate, *see infra* Section I.B.1, the Court will apply Rule 12(b)(1). In any event, as the Court need not look outside the pleadings in deciding the Motions, there is no meaningful difference between review under Rule 12(b)(1) and Rule 12(b)(6). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

24-CV-861 JLS (LR)

*of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the action." *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks omitted) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

## ANALYSIS

Though the Motions to Dismiss comprehensively address the Amended Petition, the question of Petitioner's standing to bring its federal claims proves dispositive. The Court thus starts with standing, before considering (1) whether this case should be remanded or dismissed; and (2) whether Petitioner is due attorneys' fees.

## I.    Standing

In *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, and under the heading "The City's Standing," the Ninth Circuit held that "[p]olitical subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment." 625 F.2d 231, 233 (9th Cir. 1980) (alteration in original) (quoting *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973)). The Parties thus agree Petitioner cannot challenge AB 918 "in its own capacity" on federal equal protection grounds. Opp'n at 18 n.5. But, per Petitioner, it may wield third-party standing to borrow its patients and voters' constitutional rights. For this gambit to work, Petitioner must maneuver around *South Lake Tahoe*, navigate through Article III's requirements, and negotiate prudential standing considerations. The task is unenviable. No case has charted a map of this particular doctrinal intersection; in fact, the interplay between political-subdivision and third-party standing is all but a question of first impression in the Ninth

Circuit.[8]  Ultimately, Petitioner fails to find its way through this murky terrain.

### A.   Legal Framework

Before diving into the deeper end of some muddy legal waters, a review of the basics is in order.

#### 1.   Constitutional, Prudential, and Third-Party Standing[9]

Standing doctrine, which "asks whether a litigant is entitled to have a federal court resolve his grievance," *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004), involves two sets of considerations: "constitutional limitations on federal-court jurisdiction" and "prudential limitations on its exercise," *id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Built on the separation-of-powers principles baked into Article III, constitutional standing doctrine requires plaintiffs to establish a "personal stake in the lawsuit . . . sufficient to make out a concrete 'case' or 'controversy' to which the federal judicial power may extend." *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000).  To satisfy this standard, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

Meanwhile, prudential standing represents a body of judicially self-imposed rules that are "designed to protect the courts from 'decid[ing] abstract questions of wide public significance even [when] other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect

---

[8] The court in *Nevada Irrigation District v. Sobeck* encountered the issue.  *See* No. 2:21-CV-00851-DJC-CKD, 2023 WL 8452121, at *6 (E.D. Cal. Dec. 6, 2023).  But there, unlike here, the plaintiff's "briefing fail[ed] to assess the third-party standing requirements," so the court "decline[d] to find that [the plaintiff was] asserting . . . the rights of its constituents."  *Id.*

[9] Some Respondents assume Petitioner seeks to assert associational—rather than third-party—standing. *See, e.g.*, IVHD's Mot. at 24.  As this is not correct, *see* Opp'n at 18 n.5, the Court does not address associational standing.

individual rights.'"  *United States v. Windsor*, 570 U.S. 744, 757 (2013) (alterations in original) (quoting *Warth*, 422 U.S. at 500).  One such rule limits plaintiffs to "assert[ing] [their] own legal rights and interests" rather than those of "third parties."  *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022) (quoting *Warth*, 422 U.S. at 499).

So-called third-party standing, on which Petitioner relies, represents an exception to this prudential rule and allows a litigant to assert the rights of others.  Said exception applies where "(1) 'the party asserting the right has a close relationship with the person who possesses the right' and (2) 'there is a hindrance to the possessor's ability to protect his own interests.'"  *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 764 (9th Cir. 2018) (quoting *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017)).  But because Article III standing is a "jurisdictional prerequisite to the consideration of any federal claim," *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255 (9th Cir. 2008), any arguments about third-party standing are moot here if Petitioner cannot satisfy Article III, *see, e.g.*, *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024) ("[E]ven when we have allowed litigants to assert the interests of others, the litigants themselves still must have suffered an injury in fact . . . ." (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)).  In other words, prudential rules and their exceptions cannot salvage a case where constitutional standing is lacking.  *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006) ("[E]xceptions to the prudential rule presuppose a litigant who has *already* met the constitutional requirements.").

### 2.  *Standing and Political Subdivisions*

Since *South Lake Tahoe*, the Ninth Circuit has "consistently held that political subdivisions lack standing to challenge state laws on constitutional grounds in federal court."  *City of San Juan Capistrano v. Cal. Pub. Utilities Comm'n*, 937 F.3d 1278, 1280 (9th Cir. 2019).

Indeed, later cases clarified that *South Lake Tahoe*'s standing bar is a "broad, per se rule."  *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1362 (9th Cir. 1998).  It applies to a wide swath of entities, whether they are suing "the state

itself or another of the state's political subdivisions." *S. Lake Tahoe*, 625 F.2d at 233; *see also San Juan Capistrano*, 937 F.3d at 1280 n.1 ("We have held that a city, an airport authority, a health district, and a school district all lack standing to sue a planning authority, a city, and various state agency officials."). The rule does not discriminate between Fourteenth Amendment claims and Supremacy Clause challenges. *See Burbank*, 136 F.3d at 1364–65. Nor does its application vary based on "the procedural context in which those claims are raised." *San Juan Capistrano*, 937 F.3d at 1281.

To date, the Ninth Circuit's political-subdivision inquiry has focused "only on the identity of the parties" and the claims involved. *Id.* Essentially, *South Lake Tahoe*'s rule applies whenever the litigant (1) is a political subdivision (2) bringing constitutional claims (3) effectively against the state. *See Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir. 1999).

### B. Discussion

The Parties agree *South Lake Tahoe* and its descendants prevent PMHD from asserting an equal protection claim of its own.[10] They see eye to eye on little else. The remaining disputes boil down to three questions: (1) does *South Lake Tahoe* preclude Petitioner from even attempting to establish Article III standing; (2) presuming Petitioner can get around *South Lake Tahoe*, does the Amended Petition allege a constitutionally adequate injury in fact; and (3) if Petitioner can—and has—satisfied Article III, does Petitioner successfully plead the elements of third-party standing? This case ends at the first question, which the Court answers in Respondents' favor. And even were that not so, Petitioner would stumble at each remaining step.

#### 1. South Lake Tahoe and Article III Standing

The Parties paint different pictures of *South Lake Tahoe*'s relationship to Article III, particularly as to the injury-in-fact requirement. The Attorney General believes *South Lake*

---

[10] The Ninth Circuit has made clear that California health care districts (like PMHD and IVHD), as public corporations whose "powers are limited to those granted [them] by the state," are considered "political subdivisions" for purposes of the *South Lake Tahoe* Rule. *Palomar*, 180 F.3d at 1107–08.

*Tahoe* and company make it *impossible* for PMHD to establish a qualifying injury because PMHD has "no constitutional rights as against the State." AG's Mem. at 10. Petitioner counters that *South Lake Tahoe* precludes PMHD only from asserting injury to its own equal protection rights, not from borrowing the constitutional rights of others after showing an injury to some *other* cognizable interest. *See* Opp'n at 19–21.

Underlying the Parties' arguments lurks a thorny question: how does the political-subdivision rule operate within the wider web of standing? Neither *South Lake Tahoe* nor any of its descendants elaborate much on this topic. *See San Juan Capistrano*, 937 F.3d at 1280 ("*South Lake Tahoe* offered no independent reasoning for its per se standing rule."). This vagueness has not gone unnoticed. *Id.* at 1282–84 (Nelson, J., concurring) (noting lack of clear connection between *South Lake Tahoe*'s rule and constitutional standing); *Palomar*, 180 F.3d at 1109 (Hawkins, J., concurring) ("We have . . . never satisfactorily stated our rationale for including all constitutional challenges within the ban."); *Indian Oasis–Baboquivari Unified Sch. Dist. v. Kirk*, 91 F.3d 1240, 1246–47 (9th Cir. 1996) (Reinhardt, J., dissenting) ("*South Lake Tahoe* did not explain whether concerns about the standing of political subdivisions or concerns about the constitutional rights they possess underlay its holding."), *reh'g en banc granted*, 102 F.3d 999 (9th Cir. 1996), *appeal dismissed*, 109 F.3d 634 (9th Cir. 1997) (en banc).

The few hints available in the case law support the Attorney General's argument—at least, to the extent he grounds the *South Lake Tahoe* Rule on the idea that political subdivisions lack constitutional rights vis-à-vis their parent states. *South Lake Tahoe* relied in part on *Williams v. Mayor and City Council of Baltimore*, where the Supreme Court explained that "[a] municipal corporation . . . has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator." 289 U.S. 36, 40 (1933). And when the Ninth Circuit does broach *South Lake Tahoe*'s origins, it tends to note the connection to *Williams*. *See San Juan Capistrano*, 937 F.3d at 1280; *Palomar*, 180 F.3d at 1107 ("[P]olitical subdivisions . . . 'have generally been denied standing in the federal courts to attack state legislation as violative of the federal

Constitution, on the ground that they have no rights against the state of which they are a creature.'" (quoting Richard H. Fallon, Jr., et al., *Hart and Wechsler's The Federal Courts and The Federal System* 180 (4th ed. 1996))).

The problem?  If a conspicuous link between *South Lake Tahoe*'s focus on rights and contemporary Article III standing doctrine (let alone its injury-in-fact requirement) exists, it eludes the Court.  It is beyond question that political subdivisions can, generally speaking, suffer a concrete and particularized injury worthy of Article III attention. *See, e.g.*, *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197–98 (9th Cir. 2004).  It is equally clear that an individual's constitutional rights can be violated by a state's actions against a subdivision.  *See Gomillion v. Lightfoot*, 364 U.S. 339, 344–45 (1960) ("Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution.").  And the very premise of third-party standing is that a plaintiff—having suffered his own injury in fact—can sometimes "rest" his claims on legal rights *he does not possess*.  *E.g.*, *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).  So, assuming Petitioner can demonstrate a cognizable injury, there is no obvious reason why *Williams*'s—and, by extension, *South Lake Tahoe*'s—rights-based reasoning prevents Petitioner from leaning on the interests of others.

Indeed, viewed through *Williams*, *South Lake Tahoe* reads more like a cause-of-action case, not a standing one.  In *Williams*'s day, the "standing" inquiry asked if a party "was correct in its claim on the merits that the statutory or constitutional provision in question protected its interests." *Kerr v. Polis*, 20 F.4th 686, 695 (10th Cir. 2021) (quoting *Rogers v. Brockette*, 588 F.2d 1057, 1070 (5th Cir. 1979)).  But courts no longer talk about standing that way.  Rather, *Williams*'s inquiry more closely resembles the zone-of-interests test, which in statutory cases looks at whether a plaintiff's "interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  And the zone-of-interests test bears on whether a plaintiff "has a cause of action," not standing.  *Id.* at 127–28.; *see also Sierra Club v. Trump*, 929 F.3d 670, 700 n.24

(9th Cir. 2019) ("[T]he zone of interests test does not go to a plaintiff's standing but rather to whether the plaintiff has a cause of action.").  Perhaps not surprisingly, some circuits no longer analyze political-subdivision-versus-state constitutional claims under Article III.[11]  Similarly, cases applying *South Lake Tahoe* regularly draw concurring and dissenting opinions questioning the political-subdivision rule, some of which take aim directly at the rule's uncertain connection to standing.[12]

Nevertheless, the Court concludes it must consider *South Lake Tahoe*'s rule as a bar to standing.  The language of standing may have moved on elsewhere in the law, but the Ninth Circuit has steadfastly maintained its original formulation of *South Lake Tahoe* as a standing case.  *See, e.g.*, *San Juan Capistrano*, 937 F.3d at 1280 (referring to *South Lake Tahoe*'s "per se standing rule" in a post-*Lexmark* and *Lujan* opinion).  More to the point, the Ninth Circuit has implied that the political-subdivision rule is based on something *beyond* whether political subdivisions have certain constitutional rights.  *See id.* at 1280 n.2 (explaining "[o]ther circuits have applied the Supreme Court's decisions in *Williams* [and related cases] differently" and noting "the Sixth, Seventh, and Eleventh Circuits have interpreted [those cases] to hold that political subdivisions have no Fourteenth Amendment

---

[11] *See Kerr*, 20 F.4th at 698 ("We believe the 'standing' in 'political subdivision standing' is a misnomer. 'In speaking of "standing," cases [related to *Williams*] meant only that, on the merits, the municipality had no rights under the particular constitutional provisions it invoked.' This is not a jurisdictional inquiry. Rather, . . . this inquiry is a way of discerning whether political subdivisions have alleged a cause of action against their parent state in a given case." (citations omitted) (quoting *Rogers*, 588 F.2d at 1068)); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70–73 (2d Cir. 2019) (concluding political subdivision had Article III standing before separately addressing whether its suit was barred by *Williams* and related cases); *cf. Amato v. Wilentz*, 952 F.2d 742, 755 (3d Cir. 1991) ("[W]e agree with the County that these cases may not be standing cases (in the modern sense of the term) but instead holdings on the merits.").

[12] *See Indian Oasis*, 91 F.3d at 1246 (Reinhardt, J., dissenting) ("[*South Lake Tahoe*] made no reference to the usual standing criteria, and its reasoning, although elliptic, appears to be addressed to whether the city possessed a cause of action."); *Palomar*, 180 F.3d at 1109 (Hawkins, J., concurring) ("I believe our en banc court should take another look at *South Lake Tahoe* and its progeny."); *Burbank*, 136 F.3d at 1364 (Kozinski, J., concurring) ("[T]he fact that three other circuits seem to have recognized an exception to the per se rule . . . might be a reason to reconsider the matter en banc."); *San Juan Capistrano*, 937 F.3d at 1282 (Nelson, J., concurring) (recommending the Circuit "revisit the court's per se rule in light of intervening caselaw from other circuit courts and the Supreme Court").

rights").

Additionally, the Court finds itself unable to ignore a more practical point made by the Attorney General. He contends that if Petitioner could assert third-party standing, "there would be nothing left" of *South Lake Tahoe*'s "longstanding rule." AG's Mem. at 10. Though not the most doctrinally satisfying explanation—as it leaves unresolved *South Lake Tahoe*'s exact place in the machinery of standing—the argument has merit.[13] The Ninth Circuit has repeatedly emphasized *South Lake Tahoe*'s stringency.[14] In fact, the Circuit has refused *every* invitation to limit *South Lake Tahoe*.[15] This consistency is all the more noteworthy because it sets the Ninth Circuit apart from its sister courts. *See, e.g.*, *San Juan Capistrano*, 937 F.3d at 1280 n.2 (noting the Second, Fifth, and Tenth Circuits (unlike the Ninth) allow subdivisions to bring Supremacy Clause claims against their parent states).[16] Creating a third-party standing end-run around *South Lake Tahoe*'s indelibly bright line strikes the Court as contrary to the thrust of this body of binding

---

[13] The Attorney General could be accused of being overly dramatic. The limitations placed on third-party standing are "generally strict." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014); *see also Kowalski*, 543 U.S. at 130 (noting that, outside of a few specific kinds of cases, "we have not looked favorably upon third-party standing"). So, even if subdivisions *could* avoid *South Lake Tahoe* by asserting third-party standing, succeeding in that endeavor would remain difficult. Nevertheless, the Court agrees with the Attorney General that Petitioner's position runs counter to Ninth Circuit case law.

[14] *See, e.g.*, *Burbank*, 136 F.3d at 1364 ("This court . . . has not recognized any exception to the per se rule, and the broad language of *South Lake Tahoe* appears to foreclose the possibility of our doing so."); *Palomar*, 180 F.3d at 1109 (Hawkins, J., concurring) (joining the majority, despite misgivings, "[b]ecause the current law in this circuit calls for a ban on *any* constitutional challenge by a political subdivision against its 'parent state'").

[15] *See Burbank*, 136 F.3d at 1364; *Palomar*, 180 F.3d at 1108 (declining to distinguish cases brought against state officials rather than state entities for purposes of *South Lake Tahoe*'s analysis); *Okanogan*, 291 F.3d at 1165 (holding *South Lake Tahoe* applied in case where school district sought to recover federally allocated funds that the state was withholding, even though "Congress ha[d] specifically named [the district] as one of the beneficiaries" of the funds); *San Juan Capistrano*, 937 F.3d at 1281 (finding no grounds to limit *South Lake Tahoe* to "bar[ring] only facial challenges to a statute or regulation," as opposed to "conduct in an administrative hearings").

[16] Two years after *San Juan Capistrano*, the Third Circuit joined those courts "permitt[ing] subdivisions to sue their creating states under the Supremacy Clause." *Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of N.J.*, 8 F.4th 176, 180–81 (3d Cir. 2021).

authority.

Moreover, the Court feels compelled to treat the *South Lake Tahoe* Rule as a matter of Article III—rather than prudential—standing. Though the Ninth Circuit has yet to explicitly label *South Lake Tahoe*'s rule, the court has arguably treated it as constitutional at least twice.[17] Besides, there is no obvious place for *South Lake Tahoe* in the prudential-standing firmament. The Supreme Court previously identified "at least three broad [prudential] principles: [1] 'the general prohibition on a litigant's raising another person's legal rights, [2] the rule barring adjudication of generalized grievances . . . , and [3] the [zone-of-interests] requirement.'" *Lexmark*, 572 U.S. at 126 (quoting *Elk Grove*, 542 U.S. at 12). The second item, however, has since been upgraded to constitutional status, while the third became a merits issue. *See id.* at 127 n.3. Only the rule against asserting third parties' rights remains standing (prudentially speaking), and the Court is not aware of any Ninth Circuit case law tying said rule to *South Lake Tahoe*. Plus, classifying *South Lake Tahoe* as prudential would create space for Petitioner's voters-and-patients argument, as third-party standing represents an *exception* to the surviving prudential rule. And for the reasons stated above, the Court is not empowered to leave that door open.

In sum, the Court holds that Petitioner lacks Article III standing—and thus cannot rely on a third-party standing theory—to bring its federal constitutional claims. To the extent it believes *South Lake Tahoe* should not apply, Petitioner addresses its arguments to the wrong court. Though it has difficulty connecting the dots between *South Lake Tahoe* and contemporary standing doctrine, the Court must follow the Ninth Circuit's lead. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) ("[A] published decision of

---

[17] In *Okanogan*, for example, the Ninth Circuit summarized a school district's Article III standing argument before rejecting it on the ground that "*South Lake Tahoe* control[led]." 291 F.3d at 1165–66. Further, in *San Juan Capistrano*, the Circuit affirmed a district court's decision to dismiss a case pursuant to Rule 12(b)(1) for lack of standing under *South Lake Tahoe*. *See generally City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, No. SACV 17-01096 AG (Ex), 2017 WL 6820027 (C.D. Cal. Oct. 16, 2017). And "district courts in this circuit consider challenges to prudential standing in the context of motions to dismiss under Rule 12(b)(6), *not* under Rule 12(b)(1)." *SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1434141, at *4 (N.D. Cal. Mar. 29, 2019) (emphasis added).

this court constitutes binding authority 'which must be followed unless and until overruled by a body competent to do so.'" (internal quotation marks omitted) (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc))).

### 2.   Other Standing Deficiencies

Even if third-party standing did provide Petitioner a path around *South Lake Tahoe*, Petitioner's federal claims would still fail for two reasons: its failure to plead allegations sufficient to establish (1) an injury in fact and (2) that the elements of third-party standing are met.   The Court addresses these issues briefly below.

#### a.   Injury in Fact

As a political subdivision, Petitioner "may sue to protect its own 'proprietary interests' that might be 'congruent' with those of its citizens." *City of Sausalito*, 386 F.3d at 1197 (quoting *Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 848 (9th Cir. 1985)).   Here, Petitioner claims it has suffered a qualifying injury because AB 918 "mandates that PMHD be dissolved," and "[c]easing to exist is the harshest injury possible."  Opp'n at 20–21.

Were Petitioner alleging a traditional harm to interests arising from its "responsibilities, powers, and assets," Petitioner would be on the right track.  *City of Sausalito*, 386 F.3d at 1199.  Indeed, classic "economic injur[ies]," like "the loss of tax revenues," can satisfy Article III.  *Mono Cnty. v. Walker River Irrigation Dist.*, 735 F. App'x 271, 273 (9th Cir. 2018).

But Petitioner's argument is far from conventional, as nothing in the Amended Petition suggests anything is being "lost."   PMHD alleges its "assets, rights, and responsibilities" will be "*transferred*" to IVHD.  Am. Pet. ¶ 50 (emphasis added).  PMHD thus appears to contend (1) it has an interest in existing as a political subdivision that (2) would be harmed if it were replaced, even though (3) no net loss of local government assets or responsibilities would result from the process.  As it cites no case law to support this novel theory, Petitioner has not carried its burden of establishing an injury in fact.

/ / /

b.     Third-Party Standing

Even if it had cleared Article III's hurdles, Petitioner would still fail at the finish line.  Petitioner relies almost entirely on *Sanchez v. City of Modesto*, 51 Cal. Rptr. 3d 821 (Ct. App. 2006), in asserting third-party standing.  *See* Am. Pet. ¶ 5; Opp'n at 18–21.  State court standing decisions do not, however, bear directly on the federal standing inquiry.[18] Perhaps recognizing this, Petitioner disingenuously frames *Sanchez* as a case concerned with interpreting federal standing precedents.  *See* Opp'n at 19 (contending *Sanchez* "relied heavily on the [U.S.] Supreme Court's adoption of third-party standing").  In reality, *Sanchez*'s thoughtful discussion of standing in *state* court—which the Court in no way impugns—mostly recounts *other* state court decisions that, at times, referenced federal case law.  *See* 51 Cal. Rptr. 3d at 832–35.  Indeed, *Sanchez* itself highlights the tenuous-at-best connection between that case and this one.  *See* 51 Cal. Rptr. 3d at 834 ("[W]e deal here neither with the standing of plaintiffs nor with federal court.").

Setting California standing requirements aside,[19] the Amended Petition does not contain allegations sufficient to satisfy federal law.  Third-party standing is available when: "(1) 'the party asserting the right has a close relationship with the person who possesses the right' and (2) 'there is a hindrance to the possessor's ability to protect his own interests.'" *E. Bay Sanctuary*, 932 F.3d at 764 (quoting *Sessions*, 582 U.S. at 57).  The first element is met where "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," *Viceroy Gold Corp. v. Aubry*, 75 F.3d 482, 488 (9th Cir.

---

[18] *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."); *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) ("[A]lthough the birdwatchers may well have standing under California law to bring their suit in state court, that does not help them here.").

[19] Petitioner is not the only Party guilty of focusing overly much on California standing case law.  Yes, both IVHD and LAFCO make *South-Lake-Tahoe*-based arguments.  *See* IVHD's Mot. at 18–19; LAFCO's Mem. at 11–12.  But as to the more critical question of *South Lake Tahoe*'s connection to third-party standing, IVHD and LAFCO seem more interested in debating Petitioner's hypothetical standing to sue in state court than in a federal forum.  *See* IVHD's Reply. at 6–7; LAFCO's Mem. at 12–14.  Again, this focus on California case law is misguided.  *See Hollingsworth*, 570 U.S. at 715 ("[S]tanding in federal court is a question of federal law, not state law.").

24-CV-861 JLS (LR)

1996) (quoting *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976)), which the Ninth Circuit has interpreted to require an alignment of interests between the litigant and the person whose interest she seeks to assert, *id.* at 488–89.

Petitioner claims, without further explanation, that its constituents' voting rights are "inextricably bound up" with PMHD's interest in continuing to exist. But assuming this contention could suffice if borne out, Petitioner presents no allegations nor evidence to suggest its patients and voters are against AB 918, let alone whether they care about the looming transition from PMHD to IVHD. *See Home Care Ass'n of Am. v. Bonta*, No. 21-15617, 2022 WL 445522, at *3 (9th Cir. Feb. 14, 2022) (finding evidence "of consistent alignment of interests" lacking where, based on the record, "some employees may [have] agree[d]" with the litigants seeking to assert their rights, "but other employees may [have] disagreed], and still others may not [have] care[d] at all").

Petitioner's feeble efforts fall especially short given the nature of its claims. Third-party standing is "disfavored," *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105 n.3 (9th Cir. 2006), particularly in cases that "present[] . . . difficult constitutional question[s] regarding the validity of . . . local ordinance[s]," *HomeAway Inc. v. City & Cnty. of San Francisco*, No. 14-CV-04859-JCS, 2015 WL 367121, at *12 (N.D. Cal. Jan. 27, 2015).

c.   Leave to Amend

Under different circumstances, the Court might be inclined to grant Petitioner leave to amend and address deficiencies in the injury-in-fact and third-party-standing departments. *See Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) ("The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990))). But in light of the Court's holding that Petitioner lacks Article III standing to raise its federal claims, amendment would be futile. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining dismissal without leave to amend is proper when amendment would be futile).

## II.   Next Steps

Petitioner's lack of standing to bring its federal claims confirmed, the Court turns to next steps.   Two issues require consideration: (1) remand and (2) costs and fees.

### A.   Remand

The Parties have divergent views on what should happen next.   Both Petitioner and the Attorney General ask the Court to remand this action.   Opp'n at 22; AG's Mem. at 11–12.   For his part, however, the Attorney General seems to assume Petitioner's federal claims will end here and not be remanded.   *See id.* at 12.   Disclaiming both positions, IVHD makes arguments that conflict to some degree.   First, in its Motion, IVHD asks the Court to decline to exercise supplemental jurisdiction over two of Petitioner's state law claims pursuant to 28 U.S.C. § 1367(c)(1).   IVHD Mot. at 31–32.   But in its Reply, IVHD contends the Court can and should exercise its discretion to resolve all of the Amended Petition's state-law claims because "remand . . . would be futile."   IVHD's Reply at 7 (citing *Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991)).   Meanwhile, LAFCO appears not to take a stance at all.

As an initial matter, and contrary to IVHD's first argument, the Court could not exercise supplemental jurisdiction over Petitioner's state-law claims even if it wanted to. Presuming the other requirements of 28 U.S.C. § 1367(a) are met,[20] district courts may invoke supplemental jurisdiction only when there is "a hook of original jurisdiction on which to hang it."   *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001).   And here, because the Court lacks subject matter jurisdiction over Petitioner's federal claims (i.e., the only potential jurisdictional hooks available in this case), the Court "has no discretion" to "exercise its supplemental jurisdiction under § 1367(a)."   *Id.* at 806;

---

[20] In full, 28 U.S.C. § 1367(a) states: "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

*see also Skysign Int'l, Inc. v. City & Cnty. of Honolulu*, 276 F.3d 1109, 1118 n.7 (9th Cir. 2002) ("[H]ad Skysign lacked standing to bring its federal claim, the district court would have lacked subject matter jurisdiction over that claim and accordingly would have had no discretion to hear the state law claims.").

Consequently, the Court agrees with Petitioner and the Attorney General that remand is appropriate, if not mandatory.  Under 28 U.S.C. § 1447(c), a case removed to federal court must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  And, as explained above, the Court lacks jurisdiction over *all* of the Amended Petition's claims—both federal and state.  Plus, while there is a futility exception to § 1447(c), it applies "only when the eventual outcome of a case after remand is so clear as to be foreordained."  *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016).  Here, the Court is not "*absolutely* certain[]" that each of Petitioner's various constitutional and statutory claims are doomed in state court, *id.* (emphasis added), so IVHD's futility argument is not convincing.

The Court must disappoint the Attorney General, however, by remanding this case in its entirety—federal claims and all.  As Petitioner "lack[s] standing" to raise its federal claims, the Court "cannot reach the[ir] merits."  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1004 (9th Cir. 2011).  But "state courts are not bound to adhere to federal standing requirements," *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989), so Petitioner may yet be able pursue its Fourteenth Amendment claims in state court, *see Littel v. Bridgestone/Firestone, Inc.*, 259 F. Supp. 2d 1016, 1028 n.19 (C.D. Cal. 2003) ("[S]tate courts have concurrent jurisdiction to hear claims based on violations of the U.S. Constitution.").  The federal claims will thus be remanded, not dismissed.  *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n.6 (9th Cir. 2018) ("As a general rule, if the district court is confronted with an Article III standing problem in a removed case—*whether the claims at issue are state or federal*—the proper course is to remand for adjudication in state court." (emphasis added)); *Page v. Tri-City Healthcare Dist.*, 860 F. Supp. 2d 1154, 1171 (S.D. Cal. 2012) (similar).

24-CV-861 JLS (LR)

Finally, the Court notes that remand would be called for even if *South Lake Tahoe*'s rule were not a matter of standing.  If said rule were reframed as a cause-of-action question, and presuming Petitioner could establish Article III standing, the bright-line language of *South Lake Tahoe* would doubtlessly still require the Court to dismiss the Amended Petition's Fourteenth Amendment claims.  The only difference?  Said dismissal would not be built on jurisdictional grounds.  *See Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1121 (9th Cir. 2015) ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ." (quoting *Lexmark*, 572 U.S. at 128 n.4)).  True, the Court would have discretion to exercise supplemental jurisdiction under such circumstances.  *See Herman Family*, 254 F.3d at 806; 28 U.S.C. § 1367(c).  But the Court would decline to do so pursuant to § 1367(c) given the combined lack of surviving federal claims and presence of complex state-law issues.[21]  So, Respondents would not secure the dismissal of this entire action even if *South Lake Tahoe* wore a different label.[22]

## B.    Costs and Fees

Lastly, Petitioner seeks an order requiring IVHD Respondents to pay "just costs and any actual fees, including attorney fees, incurred as a result of removal," again pursuant to

---

[21] "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  And where "all federal claims are eliminated" and only "complex questions of state law" remain, the Ninth Circuit has warned that "retaining jurisdiction . . . becomes, in some circumstances, *especially* inappropriate." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1181 n.28 (9th Cir. 2003) (emphasis added).  So even if the Court could evict *South Lake Tahoe* from standing land, the Court would not be inclined to address the merits of Petitioner's state-law claims—which primarily implicate the laws and policies of the State of California—absent live federal causes of action.  *See Meyer v. Cal. & Hawaiian Sugar Co.*, 662 F.2d 637, 640 (9th Cir. 1981) ("Federal courts should not reach out unnecessarily to decide state law claims.").

[22] The Court does not mean to suggest that the nature of *South Lake Tahoe*—and, correspondingly, the § 1367(c)-versus-§ 1447(c) distinction—is inconsequential.  For example, "[a]n order remanding a case to the State court from which it was removed" pursuant to § 1447(c) is generally "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).  But remands ordered pursuant to § 1367(c) are "not based on a 'lack of subject matter jurisdiction' for purposes of the bar to appellate review created by §§ 1447(c) and (d)." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 641 (2009).

§ 1447(c).[23]  Opp'n at 22.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  Relevant to the objective reasonableness inquiry are "the clarity of the applicable law and whether such law 'clearly foreclosed' the arguments in support of removal." *Silverman v. Silverman*, No. 15-CV-2108-AJB-BLM, 2016 WL 10894424, at *13 (S.D. Cal. Jan. 14, 2016) (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066–67 (9th Cir. 2008)), *aff'd*, 703 F. App'x 596 (9th Cir. 2017).

The Court concludes IVHD Respondents lacked an objectively reasonable basis for removal.  As IVHD notes, *see* IVHD's Reply at 7–8, its Notice of Removal asserts federal question jurisdiction based on the Petition's Fourteenth Amendment claims.  *See* NOR ¶¶ 4–7.[24]  But the presence of a federal question is not dispositive for purposes of § 1447(c). *See, e.g.*, *Parrish v. Everi Payments Inc.*, No. 2:22-CV-00511-GMN-DJA, 2023 WL 3276400, at *3 (D. Nev. May 4, 2023) ("Although this case 'arises under' federal law, Defendants did not have an objectively reasonable basis for removal.").  Standing is also part of the jurisdictional equation.  *See, e.g.*, *Tobia v. Burlington Coat Factory of Tex. Inc.*, No. 2:18-CV-00868-CKD, 2018 WL 5023421, at *3 (E.D. Cal. Oct. 16, 2018) ("Under either federal question or diversity jurisdiction, however, a federal court lacks subject matter jurisdiction if a plaintiff lacks standing to bring his claims.").

Notably, IVHD has done an about-face regarding standing (and, ergo, jurisdiction). Shortly after asserting federal jurisdiction and removing this action, *IVHD* challenged the Court's jurisdiction as to the Petitioner's only federal claims based in part on *South Lake Tahoe*.  *See* IVHD's Mot. at 18–19, 23–25.  Though *South Lake Tahoe*'s innerworkings

---

[23] As far as costs and fees go, § 1447(c) applies only to "removing defendant[s]."  *See, e.g.*, *Qureshi v. Amway Corp.*, No. C21-0869JLR, 2021 WL 3732922, at *3 (W.D. Wash. Aug. 24, 2021).  This action was removed by the IVHD Respondents.  *See generally* NOR; Am. NOR.

[24] The Amended Notice of Removal makes the same argument as to the Amended Petition.  *See* Am. NOR ¶¶ 7–10.

are somewhat opaque, *see supra* Section I.B.1, the Ninth Circuit has been *exceedingly* clear that its political-subdivision rule remains alive and well.  *See, e.g.*, *San Juan Capistrano*, 937 F.3d at 1280 ("Here, *South Lake Tahoe*, and the decisions in *Burbank*, *Palomar*, and *Okanogan* applying it, control as law of the circuit.").  Even IVHD argued as much.  *See* IVHD's Mot. at 19 (explaining (1) Petitioner has previously been found to lack standing as a political subdivision and (2) "[*c*]*ase law has not changed*" (emphasis added)).  And it should have been clear to IVHD that if Petitioner lacked standing to raise federal claims, there could be no supplemental jurisdiction over the state-law ones.  *See, e.g.*, *Herman Family*, 254 F.3d at 806; *Lopez ex rel. Lopez v. Hay*, No. 20-CV-171-GPC-MSB, 2021 WL 254204, at *9 (S.D. Cal. Jan. 26, 2021) ("Having decided . . . that the Court lacks jurisdiction to hear Plaintiffs' Section 1983 claims because Ms. Lopez lacks standing, there is no original jurisdiction that the state law claims can hang to.").

Courts faced with similar circumstances have awarded attorneys' fees pursuant to § 1447(c).  *See Parrish*, 2023 WL 3276400, at *3 (remanding and awarding fees where (1) "Defendants 'assert[ed], then immediately disavow[ed] federal jurisdiction, apparently in hopes of achieving outright dismissal'"; and (2) the law clearly indicated jurisdiction was lacking (alterations in original) (quoting *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016))); *Morgan v. Bank of Am., N.A.*, No. 2:20-CV-00157-SAB, 2020 WL 3979660, at *3 (E.D. Wash. July 14, 2020) (stating "[t]he Court has no trouble concluding Defendant lacked 'an objectively reasonable basis for seeking removal'" where the defendant "removed the case . . . only to turn around and seek dismissal . . . on the ground that federal jurisdiction was lacking" (quoting *Martin*, 546 U.S. at 141)).

Consequently, the Court is inclined to grant Petitioner attorneys' fees and costs associated with removal pursuant to 28 U.S.C. § 1447(c).[25]  However, Petitioner did not

---

[25] IVHD also argues that it tried in good faith to avoid the necessity of removal by asking Petitioner to withdraw its federal claims.  *See* IVHD's Reply at 8–10.  IVHD does not, however, explain why this ought to affect the Court's objective-reasonableness calculus nor cite case law to that effect.  IVHD's argument

submit the necessary records pertaining to its expenses.  The Court will therefore retain jurisdiction after remand to address Plaintiff's request.  *See Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 448 (9th Cir. 1992) ("[B]ecause the award of attorney's fees pursuant to 28 U.S.C. § 1447(c) is collateral to the decision to remand, the district court retained jurisdiction after remand to entertain Plaintiffs' motion for attorney's fees.").

### CONCLUSION

In light of the foregoing, the Court **ORDERS** as follows.

1)    The Court **GRANTS IN PART AND DENIES IN PART** the Attorney General's Motion to Dismiss (ECF No. 24), IVHD's Motion to Dismiss (ECF No. 25), and LAFCO's Motion to Dismiss (ECF No. 26).  Specifically, these Motions are **GRANTED** to the extent they seek to establish that Petitioner lacks standing to raise its federal equal protection claims (Counts I and II of the Amended Petition).  Additionally, the Attorney General's Motion is **GRANTED** to the extent it requests remand to state court.  The Motions to Dismiss are otherwise **DENIED**.

2)    The Court **REMANDS** this action to the Superior Court of the State of California, Imperial County.

3)    The Court **VACATES** the September 26, 2024 hearing scheduled for Petitioner's Motion for Preliminary Injunction (ECF No. 28) and **DENIES** said Motion **AS MOOT**.

4)    The Court retains jurisdiction over Petitioner's request for attorneys' fees. Petitioner **SHALL FILE** a statement of its reasonable fees and costs, along with any appropriate supporting documentation, <u>within fourteen (14) days</u> of the date of this Order. The IVHD Respondents **MAY FILE** a brief challenging the reasonableness of

/ / /

/ / /

---

only demonstrates that IVHD threatened Petitioner with removal if Petitioner pursued its federal claims in its chosen forum.

Petitioner's calculations <u>within seven (7) days</u> of the date on which Petitioner files its statement.

      **IT IS SO ORDERED.**

Dated:  August 19, 2024

                                   Hon. Janis L. Sammartino
                                   United States District Judge

24-CV-861 JLS (LR)